**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| GARY WESLEY PRITCHETT, : | |
| : | |
| Claimant, : | |
| : | |
| v. : | CASE NO. 5:09-CV-144-CAR-GMF |
| : | Social Security Appeal |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Respondent. : | |

### **REPORT AND RECOMMENDATION**

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ) determination, denied Claimant's application for social security disability benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

### **LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court's role in reviewing claims brought under the Social Security Act

is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46, 48 (5th Cir. 1973) (per curiam). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq.*

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. 20 C.F.R. § 404.1520, app. 1, pt. 404. First, the Commissioner determines whether the claimant is working. If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. Next, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations (the "Listing"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUE

I.   **Whether the ALJ erred in relying upon improper and insufficient evidence when burdened with specifying other jobs that exist in significant numbers in the national economy that Claimant could perform?**

### Administrative Proceedings

Claimant filed an application for a period of disability and disability insurance benefits on January 14, 2005. (T-39L-39N). His application was denied initially and upon

reconsideration. (T-28-29). Claimant timely filed a written request for a hearing, and a hearing was held on January 3, 2007 in Macon, Georgia before Administrative Law Judge Carol G. Moore. (R-15). Following an unfavorable decision by the ALJ, Claimant appealed to the Social Security Appeals Council, which denied Claimant's request for review on March 24, 2009. (T-4). The Complaint in the present action was filed April 17, 2009. (R-1).

## **Statement of Facts and Evidence**

Claimant's applications for disability and disability insurance benefits allege a disability beginning January 1, 2003 due to lower lumbar degenerative disc disease and neuropathy, as well as hand problems. (T-56). After careful consideration of the entire record, including hearing testimony from Claimant and Dennis M. O'Connor, a vocational expert ("VE") called as a witness by the Social Security Administration, the ALJ concluded that Claimant suffered from severe impairments of spondylosis of the lumbar spine and neuropathy. (T-17). Although the ALJ considered these impairments to be severe within the meaning of the federal regulations, the ALJ also concluded that neither these impairments, nor any combination of impairments, met or medically equaled one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (T-20). The ALJ then determined that Claimant had the residual functional capacity ("RFC") to lift/carry up to 50 pounds occasionally and 25 pounds frequently; sit/stand or walk up to six hours total for each during an eight-hour workday; and occasionally climb, stoop, and crouch. (*Id.*). The ALJ further determined that Claimant would not be permitted to climb ropes, ladders, or scaffolds and

that Claimant would require a sit/stand option. (*Id.*). Based on this RFC assessment, the ALJ concluded that Claimant could not perform his past relevant work as an Electric Line Worker, an occupation classified as heavy, skilled work. (T-24). The ALJ found, however, that considering Claimant's age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Claimant could perform. (*Id.*). The ALJ therefore determined that Claimant was not disabled. (T-26).

## DISCUSSION

**I.  Whether the ALJ erred in relying upon improper and insufficient evidence when burdened with specifying other jobs that exist in significant numbers in the national economy that Claimant could perform?**

The sole issue raised by Claimant in this action is whether the ALJ erred in relying on the evidence provided by the VE regarding the number of jobs existing in the national economy that Claimant could perform given the limitations identified by the ALJ. At step five of the sequential evaluation process, the Commissioner bears the burden of "produc[ing] evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). "In order to be disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists." *Id.* The ALJ's step five decision must be supported by substantial evidence. *See, e.g., Miller v. Comm'r Soc. Sec.*, 241 F. App'x 631, 635 (11th Cir. 2007) (per curiam).

It is clear that the Federal Rules of Evidence, including the rules governing the testimony of expert witnesses, do not govern disability adjudications. *Richardson v. Perales*,

402 U.S. 389, 400 (1971) ("[S]trict rules of evidence, applicable in the courtroom, are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent[.]"). It is less clear, however, what standards govern the reliability of evidence provided by a vocational expert.[2] At least one circuit requires its ALJs to inquire as to the reliability of data presented by a VE when such reliability is questioned by the claimant. *See, e.g., Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (noting that such inquiry would be "similar though not necessarily identical to that of [Federal Rule of Evidence] 702"); *see also Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008) (per curiam); *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) (holding that ALJ should have inquired further as to reliability when the VE did not substantiate her findings with a written report or other documentation and gave vague responses to questions posed by claimant's counsel). The Seventh Circuit reasons that "the idea that experts should use reliable methods does not depend on [Federal Rule of Evidence] 702 alone, and it plays a role in the administrative process because every decision must be supported by substantial evidence. Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." *Donahue*, 279 F.3d

---

[2]Social Security Ruling 00-4p is the Administration's effort to clarify its "standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims." SSR 00-4p. The ruling specifically requires that "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." SSR-004p. Thus, "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* This Ruling is not at issue in this case, as the ALJ properly inquired as to whether the VE's testimony was consistent with the DOT and received an affirmative response. (T-299).

at 446. Inquiry is therefore necessary because "[a] finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton*, 521 F.3d at 803. The Seventh Circuit also requires that a VE's underlying data and reasoning be available on demand; however, experts remain "free to give a bottom line" provided this requirement is met. *Donahue*, 279 F.3d at 446. In contrast to the Seventh Circuit's approach, other courts have held that "[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *see also Pena v. Astrue*, No. 07 Civ. 11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (unpublished opinion) (citing *Bayliss* and holding that the fact that the VE did not explain how she calculated the number of jobs available to claimant was not grounds for remand).[3]

Claimant contends that the ALJ should have followed the Seventh Circuit's approach and more thoroughly vetted the reliability of the VE's testimony. The ALJ determined that

> [t]o the extent that [Claimant's] challenge is solely limited to an attack on methodology or source materials, 20 C.F.R. § 404.1566(d)(1-6) and 416.966(d)(1-6) clearly provide the Administrative Law Judge the authority to take administrative notice of reliable job information or data from various governmental and other sources, including the sources attacked by the representative. The undersigned finds that the vocational expert used established and heretofore reliable methods and data and formed his professional opinions consistent with the methodology utilized by his contemporaries and other such professionals in relying upon sources, materials, and data that are not subject to further challenge until such time as either Congress or the Courts see fit to change them.

---

[3]In this case, Claimant's representative stipulated to the VE's expertise. (T-293).

7

(T-25).  The court agrees with the ALJ's reasoning.  Claimant has not directed the court to any authority suggesting that the Eleventh Circuit has any "heightened" evidentiary standard governing the reliability of vocational expert testimony.  In the absence of any regulation or binding precedent suggesting that a different legal standard applies in this case, this court must simply review the ALJ's conclusions to determine whether they are supported by substantial evidence.

During the hearing, the VE testified that he used a variety of sources to arrive at the number of jobs available to Claimant in the national economy.  The VE testified that generally, the numbers are derived from "Department of Labor resources that are gathered by various groups."  (T-303).  Among the resources cited by the VE were the *Occupational Outlook Handbook*, published by the Department of Labor (*id.*); the *Dictionary of Occupational Titles* ("DOT") (T-304); census code information (*id.*); compilations of material from U.S. Publishing, a Kansas City company that derives its data from labor department sources, including the Bureau of Labor Statistics (*id.*); and the *Thesaurus of Occupational Titles*, another compilation of Labor Department data placed in print form by U.S. Publishing (T-307).  The VE identified the date of publication of two of these sources as 1996 and 1997.  (*id.*).

Claimant specifically challenges three aspects of the VE's testimony.  First, Claimant argues that the statistical sources used by the VE were outdated.  Second, Claimant argues that to the extent the VE relied on occupational information derived from "census codes," such reliance was inappropriate because the census codes are inherently unreliable.  Third,

Claimant contends that the VE's reliance on U.S. Publishing sources was inappropriate because the underlying data complied by the company is inherently unreliable. The court will address each of Claimant's contentions in turn.

Claimant first contends that the VE's testimony is unreliable because the statistical sources used by the VE to form his opinion are "very, very old." (R-11 at 7). This contention lacks merit. It appears true that the VE used ten-year old data to establish a baseline for his conclusions regarding the number of jobs available to Claimant in the national economy. (T-307). The VE also stated, however, that he "look[s] at [the numbers] on a fairly regular basis" and changes them "as [he] go[es] along." (*Id.*).[4] Because the VE testified that he regularly updates his sources with more current information, the ALJ did not err in relying on allegedly "outdated" evidence.

Claimant also contends that the VE should not have relied on "census codes," which are apparently used to categorize some of the data upon which the VE relied. (R-11 at 7). Claimant identifies several purported problems with the reliability of census codes: (1) there is no longer a link between the *Dictionary of Occupational Titles* and census codes, since the Census Bureau no longer collects DOT-related information; (2) the majority of census questionnaires do not ask detailed occupational questions; (3) census codes do not identify exertional demands or skill levels; and (4) census codes do not contain information distinguishing part-time and seasonal work from full-time work. Despite these potential

---

[4] The court notes that Claimant did not challenge the age of the data at the hearing; rather, after Claimant's counsel informed the ALJ that he had no more questions for the VE, the ALJ asked whether the VE updated his sources. (T-307).

shortcomings, however, federal regulations permit an ALJ to take judicial notice of "reliable job information available from various governmental and other publications," including reports published by the Bureau of the Census. 20 C.F.R. § 404.1566(d). Given this regulation, Claimant's contention that the data provided by the Bureau of the Census is unreliable for purposes of a disability adjudication is untenable.

Claimant finally contends that the data compiled by U.S. Publishing, the main source for the VE's figures, "is inherently unreliable for determining the number of jobs that exist." (R-11 at 7). Claimant acknowledges that U.S. Publishing compiles data from two sources: the U.S. Department of Labor (specifically, the Bureau of Labor Statistics, or "BLS") and the U.S. Department of Commerce (specifically, the Census Bureau). (R-11 at 10). The census data provides "the benchmark" for naming individual occupations in the data compiled by U.S. Publishing. (*Id.* at 11). Each individual occupation is then updated "based on the overall growth or decline of a specific labor market" using monthly updated estimates of all labor markets that are provided by BLS. (*Id.*) U.S. Publishing then uses the first month of each quarter to update its information. (*Id.*)

As previously discussed, because part-time work is incorporated into the census data, it is also incorporated into the U.S. Publishing estimates. Likewise, the census data upon which the U.S. Publishing numbers rely does not describe occupations by skill and strength requirements, and each census code typically comprises several DOT occupational codes. Thus, in order to provide an estimate of the number of jobs with a particular strength and skill level, U.S. Publishing examines the multiple DOT codes assigned to each census code.

If, for example, "ten DOT codes are assigned [to a census code] and four are light, 40 percent [of the jobs] would be assigned to light." (R-11 at 12). Claimant contends that these alleged faults in the underlying data render the U.S. Publishing data unreliable for two reasons: (1) the data does not differentiate between part-time and full-time work or seasonal and temporary work, and (2) the apportionment of DOT codes to skill and exertional levels is arbitrary.

While it appears that the methodologies employed by U.S. Publishing may not be mathematically precise, the law does not require such precision in a disability adjudication hearing. Claimant has directed the court to no binding authority suggesting that the VE was required to identify his sources and thoroughly explain their underlying methodologies in greater detail than he did. *See, e.g., Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (finding that VE's testimony was sufficiently credible when he "identified the sources he generally consulted to determine such figures"); *see also Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) (noting the significance of VE testimony and finding such testimony reliable when VE testified he compiled his figures "from a personal survey, contact with employers and other VEs and a survey of literature such as census reports and county business patterns").[5]   As the ALJ found, the U.S. Publishing compilations are a data source commonly used by vocational professionals. *See, e.g., Lawrence v. Astrue*, No. 08-3527, 2009 WL 2178670, at *6 (7th Cir. July 22, 2009) (unpublished opinion) (noting that the

---

[5]With respect to Claimant's argument that the U.S. Publishing data failed to differentiate between full-time and part-time employment, the VE testified that he used the *Occupational Outlook Handbook*, a Department of Labor publication, to approximate the number of full-time versus part-time jobs. (T-303).

court had "found no issue with VE's regularly relying on the OEQ," a U.S. Publishing data compilation); *Liskowitz v. Astrue*, 559 F.3d 736, 743-44 (7th Cir. 2009) (noting that the OEQ "does indeed seem to be a source upon which VEs customarily rely" and finding that this fact helped vindicate the reliability of the VE's sources); *Britton*, 521 F.3d at 802 (ALJ noting that the OEQ was a "standard publication"); *see also Swincki v. Astrue*, No. 07-13596, 2009 WL 728544, at *10 (E.D. Mich. Mar. 19, 2009) (finding that ALJ reasonably relied on VE's testimony based on a U.S. Publishing source because the job information contained therein was derived from government sources of which the ALJ could have taken administrative notice). The VE's reliance on these data sources is therefore acceptable. In sum, the ALJ did not err in relying upon the VE's testimony to support his conclusion that Claimant could perform work in the national economy given his RFC.

**WHEREFORE**, it is the recommendation to the United States District Judge that the decision of the defendant Commissioner of Social Security be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

THIS the 3rd day of November, 2009.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE